GEORGE W. CHARLES and others *v.* W. W. KENNEDY, Exr., &c.

A clause in a will, giving "unto my wife Lovey, the use and benefit of all my estate, real and personal, after paying my just debts, during her natural life. I also leave in the power of my wife Lovey, to lay out all the surplus funds, consisting of notes and cash, in land, for her especial use and benefit during her natural life, and, after her death, to be given to my niece, Mary Jane, also a county claim of the following amount, $2,573 21, to be appropriated as above," gives a remainder in the surplus funds to Mary Jane, whether they were invested in lands or not.

*Especially* is this so in a will in which it appears that *Mary Jane* was the principal object of the testator's bounty ; and that the testator did not intend to die intestate as to any portion of his estate.

CIVIL ACTION, for the recovery of distributive shares in a fund of which it was alleged that one Thomas Pool had died intestate, argued, upon demurrer as to part of it, before *Pool*, J., at Fall Term 1869, of PASQUOTANK Court.

The question raised by the demurrer, turned upon the construction of the second clause in the will, which is as follows :

" I hereby leave unto my wife Lovey the use and benefit of all my estate, both real and personal, after paying my just debts, during her natural life. I also leave in the power of my wife Lovey to lay out all the surplus funds, consisting of notes and cash, in land, for her especial use and benefit during her natural life, and after her death to be given to my niece, Mary Jane ; also a county claim of the following amount, $2,573.21, to be appropriated as above."

The plaintiffs claimed that, as it was admitted that the wife of Thomas Pool had died without executing the power conferred upon her therein, of investing in land the "surplus funds," the testator must be held to have died intestate as to the remainder therein after such wife's death.

The will (dated August 20, 1838,) consisted of seven

clauses. By the *first*, a tract of one hundred and forty-nine acres of land was given to the heirs of Richard Pool, &c. ; the *second*, is given above; by the *third*, six hundred and twenty-eight acres of land, and nineteen slaves, (the land, after his wife's death,) and, by the *fourth*, four hundred acres of land and seven slaves, were given to his niece, Mary Jane Pool, after his wife's death; by the *fifth*, a slave was given to Susie Wilcox, after his wife's death; by the *sixth*, a certain house was to be sold, and the proceeds given to his wife; and by the *seventh*, his wife was appointed executrix.

The defendants demurred to the bill so far as the claim above was concerned, and answered as to other parts of it.

His Honor, after argument, sustained the demurrer, and the plaintiffs appealed.

*Pool and Smith*, for the appellants.

Mary Jane Pool's estate in the surplus depended upon the execution of the power. The remainder after the life estate of Mrs. Pool, at the death of the testator vested in his distributees, subject to be divested by the execution of the power; and this execution has not taken place.

During the argument, they cited 1 Redf. on Wills., 700; *Harrison* v. *Battle*, 1 D. and B. Eq., 213; 1 Jarm. Wills. 485 and 530; *Brown* v. *Higgs*, 4 Ves. 709 and 8 Ves. 561; Story Eq. ss. 170–176; *Costerton* v. *Costerton*, 9 Ves. 445; *Harding* v. *Glyn*, 2 Lead. Cas. Eq. 330, and notes; Story Eq. 1068–1070, Suglen on Pow. 137, 157, 182.

*Bragg, contra.*

The plain intent and construction of the 2d clause of the will is to give Mrs. Pool a life estate in all his property; with a power to invest the proceeds of the surplus notes and cash

after payment of his debts, in land, which if she did, she was to have the use of during life, as she had before in the fund. What follows is a gift to his niece, Mary Jane, whether the wife changed the fund into land or not by virtue of the power. The power did not extend to giving the surplus funds, by the wife to the niece. But the niece took a vested remainder in the fund, by virtue of the will of the testator. In construing a will, technical rules of grammar will be disregarded. So, the words "to be given" will be construed as a gift to Mary Jane, by the testator. *Lowe* v. *Carter*, 2 Jon. Eq. 377.

But grant that Mary Jane did not take a vested remainder under the will of the testator. And that Mrs. Pool took a life estate, with a power to appoint—yet that power is not general. The subject, and the object of the power are both clearly pointed out, constituting *a trust*, which vested in Mary Jane, and her representative took, at the death of Mrs. Pool—the trust was imperative and will be enforced in Equity. *Alexander* v. *Cunningham*, 5 Ire. 430; *Little* v. *Bennet*, 5 Jon. Eq. 157; *Cook* v. *Ellington*, 6 Jon. Eq. 571; 2 Sug. Pow. 173 and 186–7; Lew. on trusts, 422 and 574, &c.

It vested in Mary Jane, whether the power was executed or not. Lew. on T. 581 to 583. See also, *Malim* v. *Keighly*, 2 Ves. 333 and 529; *Malim* v. *Barker*, 3 Ves. 150; *Longmore* v. *Broom*, 7 Ves. 124; *Brown* v. *Higgs*, 8 Ves. at page 570, and sequel. As to vesting; *Bayley* v. *Bishop*, 9 Ves. 6.

Where time is not assigned to the legacy, but to the payment of it, the legatee takes a vested interest. *Cooper* v. *Pridgen*, 2 Dev. Eq. 98; *Fuller* v. *Fuller*, 5 Jon. Eq. 223; *Rives* v. *Frizzle*, 8 Ire. Eq. 237.

READE, J. The question is as to the proper construc-

tion of the second clause of the will of Thomas Pool, which is given above.

The widow did not "lay out the surplus fund in land," and the question is, whether her failure to do so caused an intestacy as to the remainder of the surplus fund, or, whether it vested in Mary Jane. The next of kin of the testator insist, that it was a gift to the widow for life, with a power to invest the fund in land, and then to give the land to Mary Jane; and that as the power was never executed, the legacy to Mary Jane fails. In behalf of Mary Jane it is insisted that it was not a general power simply, but a power *coupled with a trust* which vested in Mary Jane, and that it was not to be lost for the want of a trustee, and that the Court will enforce it.

The learning upon the subject was well presented and will be found in the cases cited. We think, however, that the doubt as to the proper construction may be solved by transposing the parts of said clause, so as to read as follows: I also leave to my wife Lovey all the surplus funds, consisting of notes and cash and a county bond of $2,573.21, during her life, and after her death to be given to my niece Mary Jane; with the power to my wife to lay out the funds in land, in which event the land shall go to Mary Jane, as the fund itself would have gone."

With this reading, it is plain that the remainder in the surplus fund would go to her if the investment had been made. We think that this is the proper construction of the clause, and that the remainder in the surplus fund vested in Mary Jane, whether laid out in land or not. We would so construe the clause unaided by extrinsic circumstances; but we are further induced to it by the considerations, (1) that it appears from the whole will that Mary Jane was the principal object of the testator's bounty (after his wife,) and we can not conceive why the testator desired her to have it if

converted into land, and to lose it if not converted. The only reason suggested at the bar was, that it might be to guard against improvident marriage; but in other parts of his will, he gives her not only land, but very large legacies in personal property. If he desired that she should have it in land only, it would have been easy in him to make it imperative on his wife to make the investment, instead of leaving it discretionary with her, as his language clearly indicates. (2.) There is nothing to indicate that the testator intended to die intestate as to any portion of his estate.

There was no error in sustaining the demurrer, which referred to the second clause, but there was error in dismissing the bill. The plaintiffs are entitled to an account, if they desire it, and if there are other questions they will arise upon exceptions to the account.

PER CURIAM.                    Order accordingly.